**A/S ACADIA, Libellant,**

v.

**CURTIS BAY TOWING COMPANY OF PA. and Louis Szalejko, Respondents,**

v.

**REDERIAKTIEBOLAGET TRANSATLANTIC, Impleaded Respondent and**

**TUG REEDY POINT and TUG NORTH POINT, Impleaded Claimants.**

**No. 105/63.**

United States District Court E. D. Pennsylvania.

May 9, 1967.

Eugene R. Lippman, Krusen, Evans & Byrne, Philadelphia, Pa., for plaintiff.

Richard W. Palmer, Rawle & Henderson, Philadelphia, Pa., for Curtis Bay and Louis Szalejko.

Benjamin F. Stahl, Jr., Clark, Ladner, Fortenbaugh & Young, Philadelphia, Pa., for Rederiaktiebolaget Transatlantic.

## SUR LIBELLANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

KIRKPATRICK, District Judge.

While being docked, assisted by two tugs, at a pier in the Port of Philadelphia, the Acadia collided with another vessel and with the pier. The owners of the Acadia began this action to recover for the resulting damage against the owners of the tugs and their employee, Louis Szalejko, who was acting as pilot and whose negligence is alleged to have caused the accident.

The Acadia was operating under a time charter between her owners and the impleaded respondent, the charterer. The tugs were owned by respondent, Curtis Bay Towing Company (Curtis Bay). The contract under which Curtis Bay was employed was in writing and had been executed by the agent of the charterer who signed it with the name of the libellant.

Curtis Bay pleaded a number of defenses to the libel among which was that the action was barred by the pilotage clause contained in the dockage contract which provided, in effect, that, when the pilot goes aboard the vessel and uses its engines, he will be the servant of the vessel being assisted and that neither the party furnishing the tugs nor the tugs nor the pilot will be liable for any damage resulting from the pilot's handling of the vessel. Another clause of the contract provides that, where the charterer orders the services of the towing company without having been authorized to bind the vessel to the pilotage clause, it will indemnify the towing company for all damage and expenses which it may incur in consequence of such lack of authority.

The motion now before me describes itself as "a motion for summary judgment in the nature of a motion to strike the defense" of the pilotage clause.

The principal argument advanced by the libellant to support this motion is that the pilotage clause in the charterer's contract with Curtis Bay was of no effect as to it for the reason that the charterer had no authority to bind it by the pilotage clause. The charter party provided nothing more with regard to pilotage than that the charterer was to "provide and pay for * * * pilotages," certainly not enough to commit the owner to the terms of whatever contract relating to pilotage the charterer should make.

In People of State of California v. The Jules Fribourg, D.C., 140 F.Supp. 333, 340, a case very nearly on all fours with the one now before me, the Court said,

> The charterer had the authority to provide for pilotage, but whatever undertaking it entered into in doing so was its own responsibility. It is not reasonable to imply from the charterer's authority to provide a pilot, the incidental authority either to waive any rights of the owner or to subject the owner to an employer's responsibility for the actions of a person who in fact was controlled by and owed primary allegiance to another employer. The implication of such authority

would not be justified even if, as the tug company contends, the owner of the Jules Fribourg was aware that pilotage clauses such as the present one were in frequent use.

It seems to me that the last sentence of the above quotation disposes of the respondent's argument based upon the fact that the libellant knew that a standard contract for towage in use in the Port of Philadelphia contained a pilotage clause as well as the stipulated fact that the incorporation of pilotage clauses in towing agreements was the universal practice of towing companies in this port. Implied acceptance of the pilotage clause is not called for by equitable considerations. The towage contract also contained the indemnity clause above referred to providing for the protection of the towing company in the event that the charterer had no authority to bind the ship. It is stipulated that both of these clauses appear in all towage contracts in Philadelphia. Hence, the parties must have contemplated that there could be circumstances in which the ship would not be bound by the pilotage clause in which case the towing company would be protected by the indemnity clause. In the absence of express authorization or ratification, there is no reason in law or fact to imply that the shipowner consented to accept the risk involved rather than to allow the charterer, who was bound to provide the pilotage, to take the risk.

See also The West Eldara, 2 Cir., 104 F.2d 670; Rawls Brothers Contractors, Inc. v. United States, D.C., 251 F.Supp. 47; States Marine Corp. v. Victory Carriers, Inc., 9 Cir., 272 F.2d 463.

Inasmuch as I am satisfied that the pilotage clause does not bind this libellant, there is no need to discuss the points raised attacking its validity.

Rule 56(d) provides that, "If on motion under this rule judgment is not rendered upon the whole case * * * the court * * * shall * * * make an order * * * directing such

further proceedings in the action as are just." There being no dispute as to any material fact concerning the issue discussed in the foregoing opinion, I conclude that this libellant is not bound by the pilotage clause contained in the contract between Curtis Bay and the impleaded respondent, and direct that that issue be not further litigated.